**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT ASHLAND**

**CIVIL ACTION NO. 24-94-DLB**

**BRIAN JERMAINE WASHINGTON**                              **PETITIONER**

**v.**                      **MEMORANDUM OPINION AND ORDER**

**DAVID LEMASTER, Warden**                                 **RESPONDENT**

*** *** *** ***

Federal inmate Brian Washington has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 challenging the imposition of disciplinary sanctions against him. (Doc. # 1). The Warden has filed his response to the petition. (Doc. # 8). Upon his request, the Court extended Washington's deadline to file his reply. *See* (Doc. # 10). However, that revised deadline has long since passed without any response from Washington. Therefore, Washington's habeas petition is now ripe for decision.

**I.**        **FACTUAL & PROCEDURAL BACKGROUND**

Officers of the Bureau of Prisons ("BOP") found Washington holding a black cellular phone in his prison cell on May 14, 2023. *See* Incident Report, (Doc. # 8-3 at 5). Washington was charged with violating Prohibited Act Code 108 – Possession of a Hazardous Tool. *Id*. Washington admitted to possessing the cell phone during the hearing held on May 17, 2023, by the Unit Disciplinary Committee ("UDC"). *See id*. at 6. The UDC referred the charge to a Disciplinary Hearing Officer ("DHO") for a hearing and decision. *Id*. The DHO conducted that hearing one week later, at which time Washington did not testify or present evidence in his defense. *See* (Doc. # 8-3 at 1). The DHO –

1

relying upon the reporting officer's statement in the Incident Report, photographs of the cell phone, and Washington's in-hearing admission of guilt – found him guilty of the charge. *See id*. at 2-3. The DHO imposed various sanctions, including the loss of good conduct time. *See id* at 3.

Washington appealed, contending that the disciplinary proceedings should have been suspended pending a determination by prison officials whether to refer the matter for criminal prosecution.[1] *See* (Doc. # 8-9 at 3). In an August 5, 2023, memorandum to the DHO, the BOP's Mid-Atlantic Regional Office ("MARO") stated that portions of the Incident Report had not been properly completed and the decision whether to refer the matter for possible criminal prosecution had not been documented.[2] *See* (Doc. # 8-6). Accordingly, in September 2023 MARO remanded the matter for a rehearing. *See* (Doc. # 8-9 at 2). The matter was referred to the Department of Justice ("DOJ") for consideration, but DOJ declined to prosecute. *See* (Doc. # 8-8 at 1-4).[3]

---

[1] Washington filed three administrative appeals in this matter, leading to a complex administrative record. The Warden compounds that complexity by incorrectly referencing the appeal numbers in his Response, *see* (Doc. # 8 at 3-4), again in the attached Declaration of Robin Eads, *see* (Doc. # 8-1 at 2), and again when filing these documents in CM/ECF, *see* https://ecf.kyed.uscourts.gov/doc1/08106725230. To clarify the record, Washington filed:

(a)   Remedy ID No. 1168893-R1 on July 17, 2023, *see* (Doc. # 8-9 at 2);
(b)   Remedy ID No. 1183369-R1 on December 4, 2023, *see* (Doc. # 8-10 at 3); and
(c)   Remedy ID No. 1192690-R1 on March 12, 2024, *see* (Doc. # 8-11 at 2).

[2] An inmate who possesses contraband can be prosecuted under 18 U.S.C. § 1791.

[3] The Warden states that the matter was then referred "to the local state prosecutor for their consideration." *See* (Doc. # 8 at 3). That may be what happened, but the documents referenced in support of that assertion do not so indicate. The "Referral of an Inmate Criminal Matter for Investigation" was sent to the Federal Bureau of Investigation ("FBI"), and the signed response indicated only that the FBI was uninterested in prosecution. *See* (Doc. # 8-8 at 3-4). That document does not indicate that it was then sent to local prosecutors. And when contacted by the BOP after this case was filed, the Office of the Commonwealth Attorney of Boyd County, Kentucky told BOP counsel that they had "no active case, *no prosecution request*, and no warrant for anyone named Brian Washington." *See* (Doc. # 8-13 (Blundell Decl.) at 1) (emphasis added).

2

The DHO held a second hearing on September 7, 2023.  *See* (Doc. # 8-4 at 1-4).  Washington presented no evidence apart from a bald denial.  *See id*. at 1.  The DHO again found Washington guilty of the offense, and ordered Washington to forfeit good conduct time.  In doing so, the DHO stated that while the DOJ had declined to prosecute, "according to SIS, another law enforcement entity picked up the case."  *Id*. at 2.  In November 2023 Washington again appealed.  While acknowledging that "there is some evidence to find Mr. Washington guilty of the incident," Washington re-asserted that the disciplinary proceedings should have been deferred until a decision was made regarding whether a criminal prosecution would proceed.  He also argued that the DHO was not impartial because she displayed hostility and aggression during the hearing.  *See* (Doc. # 8-10 at 5-6).  Upon review, MARO issued a memorandum on December 21, 2023, cryptically indicating that it was remanding the matter for a rehearing because "the inmate was provided with information that made it difficult for him to provide a defense on his behalf."  See (Doc. # 8-7).

The DHO held a third hearing on February 23, 2024.  *See* (Doc. # 8-11 at 7-10).  Washington provided no evidence apart from his statement that "If I knew I was facing an outside charge, I would have never pled guilty the first time."  *Id*. at 7.  The DHO again found Washington guilty of the Code 108 offense, and ordered good conduct time forfeit as required by regulation.  *See id*. at 8-9.  The DHO Report was issued on February 29, 2024, *see id.* at 10, and delivered to Washington on March 4, 2023, *see id*. at 4.

---

The available record does not indicate that the incident was sent to local prosecutors for consideration.

On March 5, 2024, Washington filed his third appeal to MARO. (Doc. # 8-11 at 4). In this appeal, Washington complained that: (a) the UDC hearing was held on December 26, 2023, nearly a month before MARO entered its January 25, 2024, decision remanding the matter; (b) during the UDC hearing, he was not given yet another copy of the original May 14, 2023, Incident Report; (c) during the UDC hearing, he was not given a copy of the warden's memorandum granting the UDC an extension of time to hold a hearing; (d) the UDC's December 26, 2023, decision was not signed; and (e) the disciplinary proceedings should have been deferred until a decision was made regarding whether a criminal prosecution would proceed. *See id*. at 4-5.[4]

MARO denied Washington's appeal on April 15, 2024. *See* (Doc. 8-11 at 3). MARO noted that Washington did not challenge the DHO's substantive finding of guilt, only the procedures used. It noted, nonetheless, that the Report would be amended "to more thoroughly explain the specific evidence the DHO relied on in making the decision." *Id*. The Amended DHO Report had already been delivered to Washington on April 8, 2024. *See* note 4, *supra*. MARO rejected Washington's procedural arguments. It noted that the Incident Report had not changed since it was originally issued, so Washington was already aware of its contents, and that the UDC hearing was held five days after MARO remanded the matter pursuant to its December 21, 2023, letter. *See id*.

---

[4] Shortly after Washington filed his appeal, it appears that MARO directed the DHO to amend her Report. On April 4, 2024, the DHO issued an Amended Report. *See* (Doc. # 8-5 at 1, 4). The Amended DHO Report added two sentences to the second-to-last paragraph on third page of the Report, in which the DHO notes that staff had seen Washington in possession of the cellular phone in his cell. *See* (Doc. # 8-5 at 3). Because Washington repeatedly admitted that he possessed the phone, the changes to the DHO Report are not pertinent to the issues Washington raised in his administrative appeal or in his petition before the Court.

Washington appealed to the BOP's Central Office the following day. *See* (Doc. # 8-12 at 2). In this final appeal, Washington reiterated only the first and last of his arguments to MARO: (a) that the December 2023 hearing by the UDC was improper because it occurred before MARO had remanded the case, and (e) that the disciplinary proceedings should have been deferred pending a decision whether criminal charged would be filed. *See id*. The Central Office denied Washington's appeal on July 26, 2024. *See* (Doc. # 8-12 at 1).

## II.    DISCUSSION

In his petition, Washington asserts four grounds for relief. See (Doc. # 1 at 5-6). The Court addresses each in turn.

### A.

Washington first asserts that shortly after the incident, the matter was referred to authorities in Boyd County, Kentucky for possible criminal prosecution. *See* (Doc. # 1 at 5). He contends that the BOP violated its own regulations because it did not suspend its investigation into the disciplinary charges even though it was likely that the incident would form the basis for a criminal prosecution. *See* (Doc. # 1-1 at 4). The Warden counters that the investigation had already concluded before the matter was referred for possible criminal prosecution and, in any event, Washington was not prejudiced because he was never prosecuted. *See* (Doc. # 8 at 4, 14). The Court substantially agrees with the Warden.

BOP regulations explain in detail the initial steps to be followed when an inmate is suspected of committing a prohibited act. First, an Incident Report is issued. 28 C.F.R. § 541.5(a). Then a prison officer investigates what happened. *See* § 541.5(b). As part

5

of that investigation, the officer will tell the inmate what prohibited act he has been charged with committing. See § 541.5(b)(1)(A). And they will advise the inmate that he may remain silent, but that doing so may be used against them in the disciplinary proceedings. See § 541.5(b)(1)(B). The inmate may give evidence in the form of a statement, or may ask the investigator to interview witnesses or gather other evidence. See § 541.5(b)(2). However, if the incident "*is being investigated*" for possible criminal prosecution, then "before requesting your statement" the investigation of the incident "*may be* suspended." *Id*. (cleaned up; emphasis added). On this last point, BOP internal policy documents indicate that "[w]hen it appears likely that the incident may involve criminal prosecution, the investigating officer suspends the investigation. Staff may not question the inmate until the FBI or other investigative agency releases the incident report for administrative processing." BOP Program Statement 5270.09 Ch. 2, pg. 19 (July 8, 2011).

First, the Warden is incorrect when he states that "[t]he DHO originally elected to proceed with the disciplinary hearing without considering a referral for prosecution." The governing regulation makes clear that the decision to proceed or pause is made far earlier by the investigating officer, not later by the DHO. See § 541.5(b)(2). This makes sense: failing to stop the investigation before asking the inmate to make a potentially-inculpatory statement prior to administering a proper rights advisory under *Miranda v. Arizona*, 384 U.S. 436 (1966), risks exclusion of such statements in any subsequent criminal prosecution.

Second, Washington quotes text from "541.14(b)(1)" which states that "the investigating officer **shall** suspend the investigation" when possible criminal prosecution

pends.  *See* (Doc. # 1-1 at 4) (emphasis added).  But the regulatory language he quotes no longer exists: that subsection, including its mandatory language, was repealed and replaced in 2011.  *See Bostic v. Ebbert*, No. 3:19-CV-1279, 2020 WL 4335015, at *3 n.2 (M.D. Pa. July 28, 2020).  The present regulation permits, but does not require, the UDC investigation to be suspended when the incident is being investigated for possible criminal prosecution.  *See* § 541.5(b)(2).  Here, there was no existing criminal investigation when the UDC investigator questioned Washington, and suspension was not required even if there had been.  *Cf. Bostic*, 2020 WL 4335015, at *3 ("It is clear from the above language that, in the event that a criminal investigation may commence, suspension of an investigation into the conduct alleged in the incident report is not mandatory.").  No violation of BOP regulations occurred here.[5]

Third, Washington suffered no prejudice as a result of the decision – conscious or otherwise – to proceed with the disciplinary proceedings before a decision had been made whether to prosecute criminally.  If anything, the converse is true: the investigator's choice to solicit un-*Mirandized* statements from Washington would likely have prejudiced *the government's* ability to use such statements *in the criminal prosecution*.  *See Bostic*, 2020 WL 4335015, at *4 ("It has been held that any statement made by an inmate or detainee at the disciplinary hearing may not be used against him in a subsequent criminal proceeding absent the benefit of *Miranda* warnings. . . . Bostic's remedy, therefore, if any,

---

[5] PS 5270.09 is more forceful, stating that the investigating officer "suspends the investigation" when criminal prosecution is "likely."  But BOP Program Statements are merely internal agency documents which interpret applicable statutes and regulations; they do not create enforceable rights.  *Reno v. Koray*, 515 U.S. 50, 61 (1995).  Contravention of a Program Statement is therefore not a viable foundation for a habeas claim.  *Perotti v. Quinones*, 488 F. App'x 141, 146 (7th Cir. 2012); *Mohamed v. Streeval*, No. 0:19-CV-32-HRW, 2019 WL 2163592, at *3 (E.D. Ky. May 17, 2019) (*citing Reno*).

was to file, in his criminal case, a motion to suppress the statements made during the disciplinary proceeding.") (*citing*, *inter alia*, *Mathis v. United States*, 391 U.S. 1 (1968)).[6] In sum, the BOP did not run afoul of its own regulations, and Washington could point to no prejudice if it had.

**B.**

Washington's second claim is that the reporting officer did not sign the Incident Report, and therefore it did not constitute evidence upon which the DHO could rely to find him guilty of the offense. *See* (Doc. # 1 at 5; Doc. # 1-1 at 5-6). The Warden argues that "[t]he typed name of the preparing officer is sufficient to constitute an electronic signature. And even an unsigned report does not necessarily amount to a due process violation." *See* (Doc. # 8 at 8). The Warden is correct on both counts.

This Court has recently rejected the argument that an Incident Report must be signed with pen and ink. Various statutes and court rules may require a handwritten signature for certain kinds of documents, but prison reports are not among them. Simply put, there is no legal requirement that the Incident Report be signed at all, let alone by hand. *See Mason v. LeMaster*, No. 23-CV-45-DLB, 2024 WL 3572272, at *3 (E.D. Ky. July 29, 2024); *Lytle v. Warden, FCI-Bennettsville*, No. 5:16-CV-2277-TMC-KDW, 2018

---

[6] MARO erred when it concluded that the possibility of a criminal prosecution impermissibly "made it difficult for [Washington] to provide a defense on his behalf." *See* (Doc. # 8-7). Criminal prosecutions and disciplinary hearings are separate and distinct proceedings; the fact that an inmate faces competing considerations when deciding whether to testify or remain silent in one proceeding or the other does not offend constitutional principles. *Cf. Diebold v. Civ. Serv. Comm'n of St. Louis Cnty.*, 611 F.2d 697, 700-701 (8th Cir. 1979). *See also Baxter v. Palmigiano*, 425 U.S. 308, 317-18 (1976) (holding that a prison disciplinary proceeding does not violate an inmate's Fifth Amendment privilege against self-incrimination because prison officials did not demand that the inmate waive the privilege and its administrative rules provided that an inmate's silence would not be sufficient standing alone to support an adverse decision); *Arthurs v. Stern*, 560 F.2d 477, 478-79 (1st Cir. 1977); *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 326 (9th Cir.1995).

WL 4560573, at *10 (D.S.C. Mar. 30, 2018), *report and recommendation adopted*, 2018 WL 4178448 (D.S.C. Aug. 31, 2018) ("Petitioner cannot show that his due process rights were violated even if he did not receive a signed copy of the Code 297 incident report because *Wolff* does not require any specific signature on a notice document."). After all, the purpose of creating an Incident Report is to give the inmate advance written notice of the charges against him as required by *Wolff v. McDonnell*, 418 U.S. 539, 564-70 (1974). That requirement is satisfied even if the notice is not signed. And when a reporting officer types his name on the Incident Report, it legally qualifies as a signature because he authenticates it and acknowledges it contents as his own, and because no applicable statute or rule requires the signature to be effected in a particular manner or form.

Independently, even if a handwritten signature were required, **and** the absence of one wholly vitiated the evidentiary value of the Incident Report (a doubtful proposition), the DHO had ample other evidence to support a determination of guilt. This included a photograph of the cellphone. *See* (Doc. # 8-3 at 2, 9). It also included a "Chain of Custody Log" which indicated that a "Black in color Samsung cellphone" was recovered from Washington, in his cell, at the date and time indicated in the Incident Report. The custody log was signed, in ink, by reporting officer Christopher Aeh. *See* (Doc. # 8-3 at 2, 8). It also included Washington's candid acknowledgement during the UDC hearing that "I used bad judgement, and the report is true. Please consider this is my first shot in 8 years." *See* (Doc. # 8-3 at 6). It also included Washington's unqualified admission of guilt during the DHO hearing when he stated "Yes I was in possession of the cellphone. Someone let me use it." *See* (Doc. # 8-3 at 3). The "some evidence" requirement of *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445 (1985) is satisfied if "there is *any evidence*

in the record that could support the conclusion reached by the disciplinary board." *Id*. at 454-55 (emphasis added); *Selby v. Caruso*, 734 F. 3d 554, 559 (6th Cir. 2013). The evidence before the DHO cleared that *de minimis* hurdle with room to spare.

### C.

For his third claim, Washington contends that the DHO was not an impartial decisionmaker. *See* (Doc. # 1 at 8). Washington alleges that the DHO displayed "hostility and aggression" when he tried to make his arguments, and that "[a]n impartial decision-maker would have at least made an effort to see if any federal BOP regulations were violated." *See* (Doc. # 1-1 at 6-7).

Due process required that the charges against Washington be heard and decided by an impartial decisionmaker. *Wolff*, 418 U.S. at 568. But "because honesty and integrity are presumed on the part of a tribunal, there must be some substantial countervailing reason to conclude that a decisionmaker is actually biased with respect to factual issues being adjudicated." *Pina v. Wiley*, No. 05CV-984-REB-PAC, 2006 WL 3700627, at *4 (D. Colo. Dec. 13, 2006) (*citing Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 518 (10th Cir.1998)). And the bias must be demonstrable and significant, as "[d]ue process is violated only when 'the risk of unfairness is intolerably high' under the circumstances of a particular case." *Withrow v. Larkin*, 421 U.S. 35, 55 (1975). The Supreme Court has suggested that "[d]ue process is satisfied as long as no member of the disciplinary board has become involved in the investigation or presentation of the particular case or has any other form of personal involvement in the case." *Wolff*, 418 U.S. at 592. Washington alleges no such personal involvement, only pointed questioning during the hearing itself. *See Antonelli v. Rios*, No. 06-CV-283-GFVT, 2009 WL 790171,

at *8 (E.D. Ky. Mar. 24, 2009).  That is not sufficient to demonstrate bias.  *See Rodriguez v. Barnhart*, No. 6:19-CV-146-REW, 2020 WL 5578961, at *2 (E.D. Ky. Sept. 17, 2020) (rejecting claim that "the DHO was biased because he held the disciplinary hearing despite the alleged procedural defects."); *see also Lasko v. Holt*, 334 F. App'x 474, 476 (3d Cir. 2009) (rejecting bias claim because "[Petitioner] had failed to demonstrate partiality under [relevant law], or non-conformity with the relevant BOP regulations").

**D.**

Washington concludes with a complaint that the second rehearing, held on December 26, 2023, was done before MARO issued its formal order resolving his appeal on January 25, 2024.  *See* (Doc. # 1 at 6).  As the Warden notes, however, on December 21, 2023, MARO directed the remand and rehearing, which took place five days later.  *See* (Doc. # 8 at 5, 7).

Washington fails to identify what rights, if any, were violated, by the sequence of events.  And the Court's own review fails to indicate any rights violation: no regulation or statute requires that a rehearing must await MARO's issuance of a formal order resolving an appeal.  Washington was already aware of the charges at issue, and he points to no prejudice he suffered from the rehearing occurring before MARO issued its order.  This claim therefore also fails to provide grounds to vacate the disciplinary sanctions.  *Cf. Gorbey v. Warden Lewisburg USP*, No. 21-3081, 2022 WL 5422316, at *2 (3d Cir. Oct. 7, 2022) ("Although [the inmate] was not provided with additional notice when he was transferred to another facility, he had already been afforded ample time to marshal the facts and prepare a defense prior to his transfer.  Even if he were entitled to receive additional notice when he was transferred, Gorbey does not explain how he was

11

prejudiced by the lack of notice.") (cleaned up; *citing Elkin v. Fauver*, 969 F.2d 48, 53 (3d Cir. 1992) (noting that harmless error analysis applies to cases concerning prison disciplinary proceedings)).

### III. CONCLUSION

In light of the foregoing, the Court concludes that Washington has failed to demonstrate any procedural defect or substantive infirmity in the disciplinary proceedings which led to his conviction.  The Court will therefore deny the petition.  Accordingly,

**IT IS ORDERED** that Brian Washington's petition for a writ of habeas corpus (Doc. # 1) is **DENIED** and that this matter is **STRICKEN** from the docket.

This 5th day of May, 2025.



Signed By:
David L. Bunning
Chief United States District Judge

G:\Judge-DLB\DATA\ORDERS\PSO Orders\Washington 0-24-94 Memorandum.docx